Good morning. May it please the Court, my name is Amy Kraus, and I represent Mr. Hernandez-Acosta. He's in custody serving the 52-month sentence imposed by the District Court in this case, and I would like to reserve three minutes of my argument for rebuttal. There are numerous issues that we raised challenging both the conviction and the sentencing in this case, but in light of this Court's recent order asking the parties to address the minor role adjustment following the decision last week in United States v. Diaz, I'll start there. In Diaz, this Court remanded because the District Court applied an incorrect interpretation of the guideline amendment respecting minor role. In particular, this Court looked at what it meant to be an average participant. In the guideline, it speaks to whether the defendant was substantially less culpable than the average participant. Who do you say is the average participant in this conspiracy? I didn't hear. I said who do you say is the average participant in this offense? So in this offense, Your Honor, what Diaz teaches us is that average participant has to look at the criminal scheme as a whole, and that would be this particular endeavor, as opposed to comparing Mr. Hernandez-Acosta to some hypothetical backpacking scheme. There was no, was there any, was there any evidence that the Court was doing that? I mean, one of the things that Aguilar-Diaz said was that we deem that the Court reasonably considered the factors in part because the defendant enumerated the factors in the sentencing memorandum. And we have the same situation here. He enumerated the factors. The Court said I've read the objection, read and considered the objections, but then just said it found no support for the minor role adjustment. That's correct. However, Your Honor, in Aguilar-Diaz, what the Court had trouble with was the fact that there was a record that was not elaborated very well. The same exists here. And in this case, what we know is that the district court adopted the findings that were in the pre-sentence report, and with respect to minor role, the pre-sentence report compared Mr. Hernandez-Acosta to his co-defendant. And we know that that's not the correct comparison. That's not correct. That's incorrect. That's not correct. I mean, the probation officer's statement is not correct. But I'm accurately stating what the record says. No, that's what I mean. Okay. Okay. Yeah. I just want to make sure. Correct. Yes. And that's not correct. And that's what both Quintero-Leyva say and what Diaz says. So we know that in this case there was an incorrect comparison. And that was the basis for remand in Diaz. And that same result is compelled here for that very reason. Because the district court did not enumerate the factors, even though they were clearly before him, that's another problem, as is the fact that both the government and the district court argued that the minor role adjustment was improper because Mr. Hernandez-Acosta had prior convictions for drug offenses and he was an illegal entrant. And we know those two things are irrelevant to the minor role, which pertains only to his marijuana conviction. And to your question, Your Honor, the relevant comparison would be who are the other players, known and unknown, in a backpacking scheme, the people who obtained the marijuana in Mexico, how it was loaded into the backpacks, who brought it to the border, who gave it to the people who backpacked it across the country. But you didn't make those arguments to us on appeal. On appeal, you said the district court erred by not considering the factors, which Aguilar-Diaz said that, based on that, the court did, in fact, adequately consider the factors. But those — these are the factors. I mean, these are the factors. But you didn't argue to us the substantive issue as to whether there was an error in the district court's determination. I believe I did, Your Honor, in saying that the factors would have supported the role adjustment. Because when the district court said, I find no factual support in the record, that was clearly incorrect. Because had the district court looked at the factors that we know that the district court is obligated to consider, although not taking them off one by one, they weren't considered here. But more than that, we know the district court considered the wrong factor, that he made the wrong comparison, which was the error that was found last week in Diaz. How do you characterize the conduct of the conspirator that your defendant says waved a gun at him and told him to take the marijuana? How do you describe that conduct? So I think that conduct is relevant to the imperfect directs defense that defense counsel also argued as a basis to vary downward from the sentence. But the — as to the offense itself, the conspiracy itself. Yes. How does that player fit in? Does that player, does he get an aggravating role? Does he get a no role adjustment at all? How does he fit in? Well, if I was his attorney, I certainly wouldn't argue for an aggravated role. But I may not argue for a minor role either. I think that those factors would have to be looked at underneath, you know, under the factors that are set forth. Basically, I'm trying to figure out who is the average participant. Because role adjustment, as I understand it, can be aggravating. It could be mitigating. But it's based off somebody who gets no role adjustment at all. So are there any such players in this conspiracy as far as we know from the record? Well, there are. And I think what's important to look at is — But you didn't argue it in your brief test. So we don't know. We don't know what your theory would be as to why there was an error. So the theory of why there's an error is because as a backpacker, and maybe it just seemed obvious to me, and it was maybe obvious because in the District of Arizona, particularly in Tucson, we see so many of these cases where individuals are bringing backpacks of marijuana across the border. They're referred to as human mules. They're referred to, you know, as mere backpackers. And so their role in the conspiracy or in that activity, even if it's not — the conviction is not conspiracy, is it's a very discrete task. It's an indispensable task indeed. But we know from Powell-Fox-Maison, and we know from Quintero-Leyva, and we know from Guideline Amendment, which was specifically meant to address this situation, that even somebody who plays an important and essential role, an indispensable role, albeit a smaller one in the scheme of what it takes to bring that marijuana from Mexico into the United States, is worthy of a minor role adjustment, and particularly where, as here, the person in possession of the marijuana at the time that he's caught has no proprietary interest in that marijuana. So your theory before us right now is that all of the backpackers, or like six of them or ten, that all of them should have a minor role adjustment, that they were not the average participants. Is that the argument you're making now? Well, I want to be careful about saying that, not because I'm trying to be coy, but because I don't know the circumstances. I didn't read the pre-sentence reports of all the other backpackers in this particular case. I don't know if they were all similarly situated. There could be a lead backpacker. There could be. There could be a guide backpacker. But we don't know because you didn't argue that to us. Well, that was clearly my omission. Okay. I mean, the only argument you make to us is that the court erred by not considering the factors. And, in fact, Aguilar-Diaz says the fact that they're in the defendant's sentencing memorandum, we deem them to be adequately considered. Well, in this case, there was a sentencing memorandum. Oh, you're right. It was in the sentencing memorandum here. But the difference is that because of the district court's, the pre-sentence report's reference to the comparison being this co-defendant, this one co-defendant, even among all the backpackers that were stopped at the same time and charged separately, we know that that's incorrect. So I think it would be. But then the district court was advised of the correct factors in the sentencing memorandum. No, the district court was not advised. That the defendant advised him in the sentencing memorandum just like in Aguilar-Diaz. Well, the sentencing, there really wasn't a true sentencing memorandum here. There were objections to the pre-sentence report. Correct. That was filed. And that's what the probation officer went off of when the probation officer issued a sentencing addendum. That declined to apply. Right. He declined to. He said, I reject those objections. There's no. And he just declined. Correct. He declined because he looked at the two co-defendants. Correct. Which I think is improper. And the fact that the district court didn't elaborate further makes this case very much aligned with Aguilar-Diaz in needing to find additional explanation. The objections are really directed to the probation officer. But it seems clear from the sentencing report, however, that the district court judge was aware of what the objections were because he specifically had to rule on the minor role adjustment. But what we don't. Plus the other. There were other objections that were raised. But this is not a blank record. I mean, this is not a benign record. This record actually shows there was a comparison to the wrong group. And so I would argue that that differentiates. But we don't know what the district court found, because the district court just said it found no support for minor role adjustment was its finding. That's all it said. And the district court's finding that there was no factual support, I believe, was error. I think the facts show that. Was there factual support? What was the factual support in the record? Oh, the factual support was that this defendant, Mr. Hernandez-Acosta, had no known ties to a criminal enterprise. He had no leadership role, no managerial role, no supervisory role. But we're looking at average participants. So we're looking at all of the people in his group. Isn't that right? Isn't that the average participant? It's not just the average participant. Not in terms of just the people he was. It's the entire criminal activity. So it would be larger than that group. But was there evidence? Was there evidence in the record about the entire criminal activity? Well, I think it's – There was an inference that you would make, is what you're saying. I think it's a fair inference. Okay. Thank you. You had other objections. Of course. You had other – a number of other issues you had raised regarding the sentence. That's right. Do you want to address? Sure. Another sentencing issue was the amount of marijuana that was attributed to Mr. Hernandez-Acosta, which defense counsel at sentencing objected to him being held accountable for the entire load of six backpacks instead of – But wasn't that already conceded earlier in the record? So – At the time of the plea allocution, didn't counsel not contest the weight that was going to be assigned? So I think, Your Honor, the change of plea, the factual basis referenced the weight that was to be assigned. But I don't think it was clear – and there was no plea agreement, so certainly there was nothing in writing – that of what amount would be attributed for guideline sentencing calculation purposes. Well, he said he pled to the indictment, and that said, possession with intent to distribute more than 50 kilograms of marijuana. So we know at a minimum he pled guilty to more than 50 kilograms. Well, he pled guilty to a conspiracy charge, and he did say when he was making his factual basis, in fact, he said, I don't know what the total amount was. I was just told to carry this backpack. And his counsel interrupted and said, wait a second. We know that if he – if the government says it was that much, that was the amount. So the lawyer conceded for him. Conceded. Yeah. You know, I can't concede to that, but I'd like to reserve the rest of my time. Okay. That's fine. Thank you. Thanks. Good morning, Your Honors. I'm Erica McCallum. I'm here from the District of Arizona, and I'm representing the government. Turning first to the new case, Aguilar-Diaz, and I hope that you received my 28-J letter and had an opportunity to review that. Not only that, we've also seen the case and read the case. Yes, thank you. And I think what I pointed out in that was that the – as the Court has pointed out here today, that the district court was provided with a list of all of those factors, considered those factors, and said, I don't find any factual support for this rule of adjustment. What does that mean? What does that mean? Yeah. That means – Because he says – he also says that he adopted the pre-sentence report. Yes, he did, but – Unchanged. Yes, in that there were no factual disputes in the pre-sentence report. However, if you do look at ER-79, the district court says I find no factual support for a rule of adjustment in this case, and then he goes on to discuss his reasoning for rejecting the recommended – What was – there wasn't much reasoning given. He says here Mr. Hernandez was a backpacker with, I guess, two prior drug felony convictions, so he had criminal history, which is different than the Aguilar-Diaz case. He's bringing into the United States as he enters illegally, so he's actually committing two offenses, which he pled to, illegal reentry and the marijuana. How does that relate to the factors for minor rule – for rule adjustment? I think the way that this plays out is there's a couple of key things. First of all, he pled guilty to conspiracy. So he's agreed, I'm working with the entire group. And as you've noted, today the average participant is, at a minimum, all of those backpackers who are in the group with him. So he's – and this is distinct from – Was it just backpackers or was it also those who organized it in Mexico who gathered up the marijuana and put it into the backpack and figured out how much they were going to try and ship across and how much they were going to pay the – how much they were going to pay the backpackers who was going to lead them across the border, who was going to get the – who was going to get the guide, you know, all of the – those were all the – that's the scheme that we're talking about. Sure. Those are all participants. I'm not sure I would agree that those are all average participants. Some of them have more – may have more of a proprietary or a controlling interest in how the operation works. But at least – and again, not a lot of facts on the record, not disputed on appeal, but I think we can look at the group that he's with, which is seven people. And there's no indication that he had any less responsibility than those seven. I would also note that the defense objected and asked for a minimum role, not just a minor role. So they really had a burden to show that he was far substantially less culpable than the other backpackers in the group. In addition, okay, just looking at the factors here, he's got a criminal history, he's pled guilty to conspiracy. Now, the really key factor here is the degree to which he stood to benefit. Now, in the Aguilar case, that defendant was making $1,000, which the court considered to be a fairly minor amount. But here, this is the defendant who's from Honduras, who submitted a video saying living conditions there are so horrible that I need to come back to the United States. This is his third felony drug conviction. This is his third felony reentry conviction. He's on supervised release from his prior 1326. He's got five prior deports, and his plan is to gain entry to the United States and work and send money home to his brother, who's in the DVD the court watched, who is apparently mute. So this is someone who has a tremendous amount to gain if he successfully reenters the United States. And so carrying the backpack. To help out his family? To help out his family and to personally gain and to, I assume, remain permanently in the United States illegally. So this is very different. But he apparently has been unsuccessful at that. He has been very unsuccessful, but. He's been very entrepreneurial in coming back, correct? Sure. This is someone who has not been deterred, which is another reason to deny any sort of a downward departure. But, however, I think it's also really important for the court to understand that the judge at the outset of the sentencing said, I've done the guideline calculation, and I think it's too high. So this is a situation where the judge looked at the guidelines, looked at potential departures, said I'm. . . Calculates the guidelines wrong. That's a procedural defect, and that's a remand, isn't it? It depends on how it's miscalculated. If it's a departure that is maybe misapplied or not applied, that's subsumed into the reasonableness analysis. And I think a sentence that's five levels below the bottom of the guideline range under the lowest calculation, the 2016 calculation, 32 months below is a reasonable sentence. I had forgotten about that. We had a case, I think, on Mohammed, and then there was another case after that that said, we don't review errors in departure on appeal. That's the Ellis case. Ellis. Yes. Yeah, I wrote it. You may be familiar with that case. So that's still good law here in the Ninth Circuit, right? Yes. So we don't review departures on appeal. Yes. We just look at substantive reasonableness under 3553. Right. But, again, turning back to what the court actually did here, at the outset of the sentencing the court says the guidelines are too high. And then at the end of the sentencing, after the discussion and a conversation with defense counsel, this is at page ER88, the court says at the very end, I think the guidelines are not reflective of a sentence in this case that would be no greater than necessary to accomplish all of the 3553A factors. So what the court's saying is, I looked at the guidelines. Guidelines aren't relevant here. I'm imposing a sentence that I think is fair and no greater than necessary. So, in a sense, a lot of these objections are moot or irrelevant. In my world, I wish that was the way we approach sentencing, but that's not the way we do it. Well, you start with the guidelines. We still have to go back, as Judge Vitaliano said, we still have to go back to the guidelines and ask whether or not. I mean, we say our cases are replete, and the statute requires the district judges to calculate the guidelines. Correct. To do it correctly. But we start from there. But not departures. Was this a departure? Is your position this was a departure or a variance? Was the minor role departure? Was that like an official guideline departure that we're arguing about, or are we just talking about a variance? But we're looking at the factors, whether we call it an adjustment or departure There was a significant difference under the guidelines between departures under the guidelines and an adjustment between the various categories that you apply to get to your adjusted offense level. Those are adjustments. Those are not departures. Is this a departure, an official? So the departures were put in the guidelines to give the judges discretion, but they're called departures. So is this a departure, or is this part of like the special offense characteristic or enhancement, or what is it? This is a departure because it falls under 5K, Chapter 5K. And if you look at the Ellis case, which is discussing departures, it says, oh, gosh, now I have to find my little notes here. You're saying this has no effect on the computation of the total adjusted offense level. That's what we've held, if it's a true departure under the guidelines. If it's a departure, and if you look at the language in Ellis, and I might not find it in my notes here, but it says 5K departures are a special kind of category. Those are subsumed into reasonableness. The 5K departures don't affect the offense level. They affect the sentence. After the guideline is computed. They don't affect the base offense level. So you start with. They don't affect the total adjusted level either, do they? Well, you start with an offense level. You do your adjustments. For example. And roll is an adjustment. Yes. Because this is citing 3B1.2, roll reduction, which is not a departure. It's not a 5K departure. Okay. Then forgive me. Okay. That's why I can't find it in my notes. It's an adjustment to the base. And there we said basically unless the district court has said I would give the same rule as Judge Vitaliano was saying, if there was an error in the calculation, we need to remand it. I don't think that our cases consistently say an error in the calculation is per se reversible. Yeah. We've been careful not to say it's per se, but it's darn near close. Okay. Well, in any case, I do think applying a minimal roll adjustment here or a minor roll adjustment is not supported by the facts, as the court said. And factually looking at the factors, it's very different than this Aguilar-Diaz case. And it's also clear that the court had discretion. He made a decision that he was not going to apply the minor roll. And then he looked at the sentence and said, it's not fair. I'm going very downward. I'm going to impose a sentence I think that's correct here. In addition, one more practical matter is if you look in my answering brief at pages 11 and 12. Now this is, there was grouping here, right? He has a 1326 conviction. He has the drug conviction. If you look, if you run the numbers on the grouping, even if the defendant did get a downward departure or an adjustment for a minor roll, the bottom line base offense level is 21. The offense level that the court was using was 23 under the 2015 guidelines, and he varied downward to reflect the 2016 guidelines, which took you to 22. So we're really talking about one more offense level lower if the roll adjustment were applied. And the court obviously varied downward five levels, partially to reflect the 2016 guidelines, but also just to apply a sentence that was reasonable for this particular defendant. So if there were error, it's harmless. This is one of those situations where I don't think it's necessary for the court to look at this one roll issue, send the case back because the sentence was reasonable and appropriate for this defendant as the court articulated. So if you have no further questions, I would submit on my brief and ask you to affirm. Okay, thank you. Okay. So I believe what the government is asking you to do is to say, is to skip the analysis of whether procedural error occurred and go to the substantive reasonableness of the sentence and just say, well, a 52-month sentence is reasonable under the facts of the case and the circumstances of the case, and the district court varied downward, and that sounds reasonable. But that's not the right analysis. I'm kind of disappointed that it's not. It sounds good. Because it would make our life a lot easier. We wouldn't have to go through all these analyses about all these guidelines and everything, and whether the district court judge got it right or wrong. Because the district court judge is really happy to. We could just go right to the bottom line. Is it a reasonable sentence under all the circumstances? Yeah, but you can't do that. And you can't do that. You can't. And I will say, you know, just to have a basis for comparison, Quintero Leyva is a case that we've talked about in the context of the minor role, and in that case the district court gave a sentence 36 months below the guidelines, so there was a pretty substantial variance, and this Court still looked at whether it was appropriate and correct to give a minor role adjustment. So it does mean your client could get a more stringent sentence if it's resentenced. Are you pressing anything other than the minor role? Sure. There's minor role. There's an imperfect duress defense that we briefed. We also briefed the weight of the marijuana, of course. And then also with respect to the Colorado conviction. The Colorado conviction being an aggravated felony, and thank God we're not having to do all those categorical, you know, matches anymore since that was fixed. But in this case it did have to be done, and it was done improperly for the reasons that I outlined in the brief. There was also an allegation of a Rule 11 error, which I probably don't need to address in the Court. But what I would say is that, you know . . . You're not aware of any constitutional decision that requires, at the allocution, the judge to advise the defendant of all the things, including Ouija boards and dart boards, that the sentencing judge might consider at the time of sentence? No, of course not. And I think the case law that discusses subsection M in particular talks about how it would be impossible for any district court judge to advise a defendant who's pleading guilty what the outcome of, you know, what the guidelines determination would be in that case. So . . . So this is just a pure Rule 11 error, and that alone, you believe, would warrant remand? Well, what warrants remand is a showing that the defendant would not have pled guilty absent the error. And, you know, I will agree that the record on this could be better, obviously, if the defendant objected at some point or, you know . . . Plenty of times he objected. He never did. Plenty of times he objected, and he didn't. But he did say at sentencing, Judge, can you just give me what's fair, which I think you can draw a fair inference. Your adversary said the judge did exactly that? I'm sure the judge thought so, absolutely. I appreciate your time. I would ask the Court to consider both the arguments that go to the procedural reasonableness . . . the procedural correctness of the guidelines calculation. The briefing points out numerous ways that there were errors in that regard. And then when you get to the reasonableness of the sentence because the guidelines weren't correctly calculated, because the District Court judge's explanation was fairly thin, it's very difficult, I think, to be certain that all of the factors that needed to be considered and that were appropriately before the judge considered. And for those reasons, I'd ask that you reverse and remain. Okay. Thank you, Counsel. Thank you. We appreciate your arguments this morning. The matter is submitted.
judges: Paez, Ikuta, Vitaliano